Lauer, J.
The defendant Caleb A. Morales on the 17th of September, 1919, purchased at auction from the plaintiff’s assignor, Richard C. Allez, certain premises on the southerly side of Two Hundred and Fifteenth street in the city of New York. According to the terms of sale which were signed by the parties the property was sold free and clear of any taxes and *141 assessments, bnt there was contained therein the provision that “All liens or encumbrances upon said premises will be allowed out of the purchase money.” The title was closed on November 28, 1919, and a deed delivered which conveyed the premises purchased to the defendant Mary A. Morales, the wife and designee of the purchaser at the sale, Caleb A. Morales. The deed conveyed the premises free and clear. At the closing there was executed and delivered to the seller the following paper writing:
“ New York, Nov. 28, 1919.
“ Title Guarantee and Trust Company
“ 176 Broadway, N. Y. 176 Remsen St., Bkln.
“Allowed out of the purchase price on account of taxes and assessments $1386.64 to pay taxes and assessments. If the seller succeeds in having these taxes and assessments removed & cancelled as a lien within one month the amount so removed and cancelled as a lien shall be returned to him.
‘ ‘ (sgd) John L. Montgomery
‘ ‘ Montgomery & Peabody

“Attorneys for Purchaser.”

Pursuant to this paper there was allowed out of the purchase price the sum of $1,386.64.
At the time of the sale of the property and at the time when title was closed there existed three liens against the property: (1) an assessment for sewer on West Two Hundred and Eighteenth street, entered March 14, 1917, which was a lien against the property sold to the extent of $508.50; (2) for regulating and paving Seaman avenue, entered on March 5, 1918, which was a lien against the property sold to the extent of $378.93; and (3) a further assessment which had prior to the time of sale been apportioned and made an installment assessment pursuant to chap *142 ter 399 of the Laws of 1912, and which at the time of the sale was a lien only to the extent of the installment then due and unpaid. This third assessment does not come into question in the present litigation. The other two assessments had not prior to the date of sale or at the time of closing title been apportioned and at both of these times were liens against the property to the full amount of the assessments.
On November 29, 1919, the day following the closing of title, application was made by the attorneys for the seller to the collector of assessments and arrears of the city of New York pursuant to chapter 399 of the .Laws of 1912, to convert the two assessments referred to, one for the sewer on West Two Hundred and Eighteenth street and the other for regulating and paving Seaman avenue, into assessments which might be paid in installments. This statute which adds section 1019-a to the Greater New York charter provides that “ Upon the application in writing of the owner of a parcel of real property affected by an unpaid assessment for a local improvement confirmed prior to the 1st day of September, 1912, and after the 1st day of January, 1908, the amount of which exceeds 5 per cent, of the valuation of such parcel made for the purpose of annual taxation in the calendar year next preceding such confirmation, the collector of assessments and arrears shall divide the assessment upon such parcel into ten parts as nearly equal as may be. ’ ’ The section further provides for the payment within ten days after the division of the installments representing as many parts as there are years elapsed since the confirmation of the assessment. The section further provides that the next installment with interest shall become due and payable and be a lien on the next ensuing anniversary of the date of entry of the assessment and that thereafter one installment with interest shall become due and payable and be a lien on the prop *143 erty annually thereafter. The concluding sentence of this section is that “Except as provided in this section, no such annual installments shall be a lien or deemed to. be an incumbrance upon the title to the real property assessed until it become due as herein provided. ’ ’
The application made by the attorneys of the seller on November twenty-ninth was granted on December 2,1919. This required payment to be made on December 12, 1919, in order that the apportionment be made effective pursuant to the section just quoted. On December 11, 1919, the attorneys for the seller notified the attorneys for the purchaser that their application had been granted and requested that the first installment of the assessment be paid on or before December twelfth. This payment however was not made. It is to be noted that the statute provides that the conversion of the assessment into one payable in installments can only be made upon the application in writing of the owner of a parcel of real property. At the time the application was made by the attorneys for the seller title had already passed to the purchaser. Therefore the application was not made by the owner of the real property affected by the unpaid assessment as required by the statute and the conversion into an assessment payable in installments was not one made pursuant to the statute. It appears, however, that on December 8, 1919, a similar application to that made by the attorneys for the seller was made by the defendant Caleb A. Morales as agent for and acting on behalf, of his wife Mary Agnes Morales who at that time was the owner of the property in question. This application was granted and payment of the first installment was made on the 16th day of December, 1919, by the defendant Mary A. Morales, the owner of the property.
The plaintiff seeks in this action to recover the difference between the payments made for the first install *144 ments of these two assessments, with interest, and the amount of the deposit. The defendants contend that the writing signed by the attorney at the time of closing is an agreement without consideration and therefore void. While there is some force in this contention (Far Rockaway Bank v. Smith, 63 App. Div. 432), nevertheless I prefer not to decide the case on this theory. The position of the seller may have been altered because of the execution and delivery of the paper executed on behalf of the purchaser and delivered at the time of closing of the title. This would have afforded a sufficient consideration to support the agreement. Where a purchaser is allowed the amount of an assessment out of the purchase money the seller cannot afterward recover the amount back even though the assessment is subsequently vacated. James v. Schmidt, 18 N. Y. St. Repr. 367. According to the writing of November twenty-eighth there was allowed by the seller to the purchaser out of the purchase price on account of taxes and assessments $1,386.64 ‘ ‘ to pay taxes and assessments.” Under this agreement the defendants were not obligated to pay these taxes and assessments at any specified time nor to pay at the moment they were called upon to pay by the seller. The notice therefore sent by the attorneys for the seller on December eleventh requiring the purchaser to pay on December twelfth, the following day, the first installment of the apportioned assessment was ineffective to put the purchaser in default. In any event, the apportionment which the seller succeeded in having made in the collector’s office was not one provided for by the statute, and in my opinion was not a valid apportionment. Under the circumstances, in no event was the purchaser obligated to make the payment of an installment under that apportionment of the assessments.
The agreement further provides that ‘ ‘ If the seller *145 succeeds in having these taxes and assessments removed and cancelled as a lien within one month the amount so removed and cancelled as a lien shall be returned to him.” In the present case the seller did not succeed in having these taxes and assessments either removed or cancelled as a lien. It is true that the purchaser had succeeded in having the assessment apportioned so that it could he paid by installments but the seller did not succeed in having this done and could not succeed in having it done according to the statute. Placing my decision, however, upon a broader ground, I do not think that the purchaser who was entitled to have the full assessment paid or have a proper allowance therefor made on the closing of the title intended by this agreement to deprive himself of this advantage and benefit and confer upon the seller the opportunity to shift on the shoulders of the purchaser the payment of all except the installment of the assessment then due after the apportionment had been made. That no such intention can properly be concluded from the agreement which was signed I think must be a conclusion ■ from the very nature of the wording of section 1019-a of the Greater New York charter before quoted, because the apportionment can only be made upon the application of the owner and title passed at the time of the execution of this agreement which I am called upon to construe in this litigation. After the title passed it could not have been within the contemplation of the parties that the seller could succeed in having the taxes and assessments removed as a lien by virtue of an apportionment of the assessment which could only have been made according to the terms of the statute on the application of the owner. Again, I should hold that, where as under the provisions of that same section, it is provided that each installment as it becomes due and payable shall become a lien on the real property covered *146 by the assessment, the assessment has not been ‘ ‘ removed and cancelled ’ ’ within the fair interpretation of the agreement in question.
Entertaining these views, it follows that judgment should be for the defendant.
Judgment for defendant.